UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CORNELIUS JEROME DESHA,<br><br>           Plaintiff,<br><br>v.<br><br>LOUISIANA STATE BOARD OF NURSING,<br><br>           Defendant. | CIVIL ACTION<br><br>Case No. 3:15-00021-JWD-RLB |

### ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.     INTRODUCTION**

Before the Court is Plaintiff's Request for a Preliminary Injunction ("Injunctive Request"), (Doc. 20), partly supported by the Motion to Proceed with Preliminary Injunction Without Plaintiff's Presence ("Motion to Proceed"), (Doc. 30), and counted by the Memorandum in Opposition to Motion for Preliminary Injunction ("Opposition"), (Doc. 29). Having considered the Parties' arguments, in light of Plaintiff's failure to provide sufficient support to satisfy the four elements for obtaining injunctive relief under Federal Rule of Civil Procedure 65,[1] this Court DENIES WITHOUT PREJUDICE Plaintiff's Request for a Preliminary Injunction, (Doc. 20), and Motion to Proceed with Preliminary Injunction without Plaintiff's Presence, (Doc. 30).

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] In this opinion, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

A.     **Uncontested Facts**

On July 21, 2009, Mr. Cornelius Jerome Desha ("Plaintiff" or "Desha") applied to be a licensed nurse with the Louisiana State Board of Nursing ("Board" or "Defendant"). (Doc. 29-2 at 7.) He had been previously licensed in California as a registered nurse. (*Id.*) There, after obtaining his license without apparent hitch, he had been arrested for and found guilty of public intoxication and was arrested for and plead guilty to driving under the influence. (*Id.*) These arrests and pleas had remained upon his record, never expunged by a California court. (*See* Doc. 16 at 2–3.)

In the application for his Louisiana nursing license, Plaintiff was asked: "Have you been issued a citation or summons for, or has/have warrant(s) been issued against you related to, or have you been arrested, charged with, arraigned, indicted, convicted of, pled guilty/'no contest'/'nolo contender'/'best interest of' or any similar plea to; or been sentenced for any criminal offense, including all misdemeanors and felonies in any state or other jurisdiction?" (*Id.*) This question explicitly emphasizes its breadth in the a note: "***Even though an arrest or conviction has been pardoned, expunged, dismissed, deferred, or diverted***, and even if your civil rights have been restored, you must answer 'YES' and mail certified court documents of incidents/arrest together with a signed letter or explanation." (*Id.* (emphasis added).) While Plaintiff disclosed several instances, including the intoxication-related charges, he apparently did not disclose his arrest for grand theft and obtaining property by false pretenses, for being under the influence of a controlled substance, for burglary, for evading a peace officer, for driving at an unsafe speed, and for inflicting corporal injury on his spouse or cohabitant. (*Id.* at 8.) After uncovering these omissions, Defendant attempted to enter into a consent order with Plaintiff, "which would have imposed certain conditions upon . . . [his] license." (Doc. 29 at 2

n.5.) Once Plaintiff rejected this conditional offer,[2] a formal hearing was commenced on March 31, 2015, and Plaintiff was denied a license to practice as a registered nurse in the Bayou State pursuant to Louisiana Revised Statutes § 37:921. (Doc. 29-2 at 9.) As Plaintiff and Defendant agree, Defendant's ultimate action—the denial of Plaintiff's application for a nursing license in Louisiana—was thus predicated on Plaintiff's self-evident omissions. (*Id.*; Doc. 16 at 3.)

As required by federal law, Defendant reported this "adverse action" to the Healthcare Integrity and Protection Data Bank ("HIPDB") through Nursys, "a national database of nurse licensure, discipline, and practice privileges for Registered Nurses and Licensed Practical Nurses." (Doc. 29 at 1–2.) When Plaintiff subsequently sought to obtain employment as a registered nurse in his current home state of California, he was stymied by this report, Nursys described to him by one possible employer "as the primary site for checking on nurses in California." (Doc. 20 at 1.) Similar events have occurred, so that Defendant's reporting of this information has made "it impossible for . . . Plaintiff to find work as a [registered nurse]" despite an ongoing "active job search." (Doc. 1 at 2.)

## B.  Procedural History

On January 22, 2015, Plaintiff filed his complaint. (Doc. 1.) On that same day, he docketed the Motion to Proceed in Forma Pauperis, (Doc. 3), which was granted on February 3, 2015, (Doc. 4). A scheduling order was sent out on February 6, 2015, (Doc. 6), and Defendant responded with the Motion to Dismiss the Complaint Pursuant to FRCP Rule 12(b)(6), (Doc. 8). Plaintiff responded with the Memorandum in Support of Motion to Proceed with Complaint Pursuant to FCRP Rule 12(b)(6), (Doc. 16).  On May 13, 2015, Defendant filed a motion to

---

[2] Plaintiff and Defendant offer different characterizations of this negotiation. (*Compare* Doc. 29 at 2 n.5, *with* Doc. 20.)

strike this memorandum. (Doc. 17.) The Injunctive Request came on June 30, 2015, (Doc. 20), and netted the Opposition on July 24, 2015, (Doc. 29). On August 6, 2015, Plaintiff asked for permission for this Court to hold a hearing on any and all outstanding motions in his absence, (Doc. 30), and in light of his absence, this Court converted the motion hearing to a status conference, (Doc. 32). Though Plaintiff was ordered to provide a number at which he could be reached and though he was called by the Courtroom Deputy, he never provided a number or returned a call. (Doc. 34.) Through December 18, 2015, he has filed and said nothing since August 6, 2015, (Doc. 30).

### C.     Parties' Arguments

Plaintiff essentially argues that Defendant's report to HIPDB consists of "lies," "untrue accusation," and "illegal information" that have made it impossible for him to find employment as a registered nurse. (Doc. 20 at 1; *see also* Doc. 1 at 2.) Thus, he sues Defendant for violation of federal statutory law (including Title VII of the Civil Rights Act of 1964) and a specific state statute and for defamation (and/or slander). (Doc. 29 at 3–4; *see also, e.g.*, Doc. 1 at 2; Doc. 16 at 1.)[3] Because of these purportedly unquestionable legal conclusions, in addition to his suffering of an irreparable harm, favorable balance of equities, and the public interest, Plaintiff contends that a preliminary injunction must issue.

As a factual mater, Plaintiff claims to have responded accurately to Defendant's licensing questions, having told them "I reported all my convictions." (Doc. 16 at 2.)  Indeed, according to

---

[3] In the complaint, he specifically seeks an order from this Court requiring Defendant to "halt the illegal, untrue reporting immediately," rescind the information already submitted, and "an adequate remedy in the sum of $300,000." (Doc. 1 at 2.) Seemingly, this sum represented his claim of lost wages, and he thus later sought to amend the complaint to include "an additional $500,000 for defamation of character." (Doc. 16 at 4; *see also* Doc. 1 at 2.)

him, he sent "copies of [all] letters to . . . [Defendant], informing . . . [it] that I had merely misread the question and had no intent to defraud them." (*Id.* at 3.) Conceding the existence of "the oversight on the initial application," Plaintiff maintains that he "delivered to them every document with written signed explanations as they had requested," being wholly "forthcoming, honest and truthful" and dealing "in good faith and all veracity." (*Id.*) In an addendum to this sixteenth filing, he repeats— "Plaintiff agrees that arrests were not reported on the original application"—and clarifies: "It is unacceptable and libelous . . . to claim fraud and deceit when the application was fully complete at the time of the final hearing." (*Id.* at 5.)

In response, Defendant contests every factor necessary for the grant of a preliminary injunction. First, it stresses that federal law required it to report any adverse action, with liability only attaching if it knowingly transmitted false information. (Doc. 29 at 3–4.) Because it simply acted in accordance with the explicit commands of federal law, Plaintiff's likelihood of success on the merits is less than the law requires for an injunction to issue. (*Id.* at 4 –5.) His Title VII claims have no merit, because Defendant is not an entity covered by this law. (*Id.* at 5–6.) Finally, with defamation requiring a statement's proven "falsity" and "malice, actual or implied," among its five requirements, Plaintiff's odds of success are small, as he "has submitted no evidence to establish" either of these two essential elements. (*Id.* at 6–7.) Second, Defendant points out that Plaintiff's harm, i.e. his inability to find "full time, gainful employment," "can easily be quantified in monetary terms," (*Id.* at 7), as he himself has already twice done so, (Doc. 1 at 2; Doc. 16 at 4). Third, Defendant emphasizes that it acted pursuant to a federal statute requiring it to report certain "final adverse actions," which included "any negative action" like a license's denial, regardless of whether the decision "is the subject of a pending appeal." (Doc. 29 at 8–9.) Consequently, an order like the Plaintiff seeks will force Defendant to act in

contravention of explicit federal regulations. (*Id.* at 9.) Fourth, based on this same law, the public interest would be ill-served "[i]f Plaintiff's requested . . . is granted, and Plaintiff is not ultimately successful on the merits of his suit," for there will necessarily be "a period of time in which the public would not be informed of a reportable incident." (*Id.* at 9–10.) In its view, "[i]t would be a disservice to Plaintiff's potential employers and the public to allow significant information about Plaintiff to be wrongly suppressed for a period of time." (*Id.* at 10.) Having asked for monetary relief totaling more than $800,000, "[s]hould the Plaintiff prevail in the underlying litigation, this Court will be able to render meaningful relief, and thus, a preliminary injunction is not appropriate." (*Id.*) To wit, the key reason for awarding such unusual relief has been neutered by Plaintiff's own attestations: "The purpose of a preliminary injunction is to maintain the status quo during litigation to allow the court to render meaningful relief." (*Id.*)

### III.  DISCUSSION

#### A.  Applicable Standards

Any plaintiff must establish four elements to secure a preliminary injunction: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Failure to prove even one element must lead to the denial of a request for an injunction. *See Planned Parenthood Gulf Coast, Inc. v. Kliebert*, No. 3:15-cv-00565-JWD-SCR, 2015 U.S. Dist. LEXIS 146988, at *71–72, 2015 WL 6551836, at *21–22 (M.D. La. Oct. 29, 2015). An extraordinary remedy, *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014); *see also Munaf v. Geren*, 553

U.S. 674, 689, 128 S. Ct. 2207, 2219, 171 L. Ed. 2d 1 (2008), a preliminary injunction aims "to prevent irreparable injury so as to preserve . . . [a] court's ability to render a meaningful decision on the merits," *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) (citing to *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1975)); *accord, e.g.*, *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998); *United States v. Alabama*, 791 F.2d 1450, 1460 (11th Cir. 1986) (adding that "[p]reliminary injunctive relief may be necessary to insure that a remedy will be available" at some future date). By circumstance and necessity, a court is "almost always" forced to rely upon "[an] abbreviated set of facts" in weighing the merits of a preliminary injunction. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984); *accord Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).

  HIPDB is a national data bank administered by the Department of Health and Human Services ("HHS") for "the reporting of final adverse actions" by state and federal agencies against healthcare providers, suppliers and practitioners. 42 U.S.C. § 1320a-7e(a); *Giannoukos v. Harp*, 369 F. Supp. 2d 715, 717 (E.D. Va. 2005). Access to the data bank is limited to authorized governmental agencies and registered healthcare plans, and failure to report an adverse action against a licensee could result in the imposition of sanctions. 45 C.F.R. § 61.7(d). As a matter of law, Defendant is an agency duly registered with the HIPDB, and it is therefore obligated to report and disclose final adverse actions pursuant to 42 U.S.C. § 1320a-7e. So bound, Defendant is wholly immune from civil liability so long as it did so "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c). The statute, in effect, creates presumptive immunity from civil liability for reporting an adverse decision. *Hooda v. W.C.A. Serv. Corp.*, No. 11-CV-504A(Sr), 2013 U.S. Dist. LEXIS 71809, at *9, 2013 WL 2161821, at

*5 (W.D.N.Y. Apr. 30, 2013). This shield even extends to state law tort claims where the damages are solely the result of a report to the NPDB. *Id.*; *see also, e.g.*, *Lee v. Hosp. Auth. of Colquitt Cnty.*, 353 F. Supp. 2d 1255, 1265 (M.D. Ga. 2004) ("This protection from liability, by the breadth of its terms, extends to civil actions brought under state tort law, where the damages claimed are solely the result of a report to the . . . [National Practitioner Data Bank]."), *aff'd*, 397 F.3d 1327 (11th Cir. 2005). In accordance with explicit federal law, even if a decision is based on flawed information, the adverse decision must itself be conveyed, with the offended party able to petition the Secretary of DHHS for the report's ultimate review.[4] *See Lee*, 353 F. Supp. 2d at 1265; *cf. Sobel v. United States*, 571 F. Supp. 2d 1222, 1225 (D. Kan. 2008).

**B.     Application**

For three reasons, the foregoing law compels denial of Plaintiff's Injunctive Request.

First, to merit a preliminary injunction, Plaintiff bears the burden of overcoming the presumption of immunity, enjoyed by Defendant pursuant to unambiguous federal law, by showing that the information transmitted to HIPDB was patently false. Regardless of his subsequent corrections, he agreed with Defendant that several "arrests were not reported on the original application"; that the application "was fully complete at the time of the final hearing" cannot obviate the fact that the information had not been properly disclosed on the application, as state regulation required. (Doc. 16 at 5.) That failure, in turn, was sufficient to justify the application's denial, and Defendant was bound to report this adverse final decision to HIPDB, however baleful it may have been for Plaintiff's professional aspirations. *Cf., e.g.*, J. Bruce

---

[4] Such review by the Secretary is limited to review of the report for accuracy of factual information and to ensure that the information was required to be reported. 45 C.F.R. § 60.16(c)(2).

Bennet, *The Rights of Licensed Professional to Notice and Hearing in Agency Enforcement Actions*, 7 TEX. TECH. ADMIN. L. J. 205, 210 & n.34 (2006) ("State and federal courts have consistently upheld the licensing and regulation of professionals under the state's police power."). In such circumstances, "immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false," *Kunajukr v. Lawrence & Memorial Hosp., Inc.*, No. 3:05-CV-1813 (JCH), 2009 U.S. Dist. LEXIS 129545, at *73, 2009 WL 651984, at *23 (quoting *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1334 (10th Cir. 1996)), and that immunity "extends to state law tort claims where the damages are solely the result of a report" tendered to the HIPDB, *Hooda*, 2013 U.S. Dist. LEXIS 71809, at *13, 2013 WL 2161821, at *5. With this law crystal clear, Defendant's own admissions underscore the insufficiency of his evidence at present to prevail and the unlikelihood of his success upon the merits in any ultimate adjudication. (*See* Doc. 29 at 8–9.) Only proof that the information was not omitted from the application *and* that the Defendant had falsely conveyed a final adverse decision to HIPDB would have imparted more than the negligible probability of success that Plaintiff must plead to get his injunction. In his papers, however, he has intimated neither and has, in fact, conceded the former. *See supra* Part II.C. As such, under binding precedent, failure to prove even this one perquisite is fatal to his injunctive request, as his every (but one)claim flows from the one action—Defendant's reporting of its denial of his application to HIPDB—that Defendant could not but undertake.[5]

Second, as Defendant rightly notes, Plaintiff has undermined his position with his demands for damages. (Doc. 1 at 2; Doc. 16 at 4.) If damages can be calculated and if they will remedy the harm, an injunction cannot issue. Within this circuit, "it is . . . well-established that

---

[5] Only one exception can be arguably made: Plaintiff's Title VII claims. But, as Defendant insists, it is clearly not an entity covered by this particular statute. (Doc. 29 at 5–6.)

an injury is irreparable only if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm"; "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975); *see also, e.g.*, *Controls Int'l, Inc. v. Kinetrol, Ltd.*, No. 3:97-CV-2504-D, 1998 U.S. Dist. LEXIS 4794, at *6, 1998 WL 158678, at *2 (N.D. Tex. Mar. 25, 1998) ("The availability of monetary damages precludes a showing of irreparable injury."). Plaintiff has sought financial recompense in his complaint, (Doc. 1 at 2); since its filing, he has raised the sum by $500,000, (Doc. 16 at 4). Seemingly, if he succeeds, money will provide him with essential, if imperfect, relief. In accordance with countless cases, this conclusion bars this Court from issuing any injunction.

Third, this Court cannot ignore the import of Plaintiff's request and his continuing silence. His desired injunction would compel Defendant to strive to somehow remove a report, one whose existence and classification as an "adverse final decision" none can reasonably question, from a database over which it has no dominion and which it had to provide as a matter of supreme federal law. While the fact that this extirpation may be administratively impossible is itself worthy of notice, as Defendant maintains, (Doc. 29 at 2), such an explicit obligation represents a public policy embedded by Congress in statute and by DHHS in binding regulation. In response to the unambiguous strictures of this complex regulatory system, Plaintiff has maintained a steady silence in the fall of 2015. If a balance must be stuck between the public interest embodied in such clear laws and the personal, albeit intensely important, interest of a single plaintiff, the Court must favor the former over the latter. *Cf., e.g.*, *Lamie v. U.S. Trustee*,

540 U.S. 526, 538, 124 S. Ct. 1023, 1032, 157 L. Ed. 2d 1024 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); *Cent. Trust Co. v. Official Creditors' Comm. of Geiger Enters., Inc.*, 454 U.S. 354, 360, 102 S. Ct. 695, 698, 70 L. Ed. 2d 542 (1982) (per curiam) ("While the Court of Appeals may have reached a practical result, it was a result inconsistent with the unambiguous language used by Congress."). Having asked for an injunction but offered little support since his motions' filing, Plaintiff has not convinced this Court to tip the scales any differently. The likelihood of success is too small, the law too clear, for a preliminary injunction to follow.

IV.    CONCLUSION

To get his desired preliminary injunction, the Plaintiff needed to meet four requirements. On the pleading so far submitted, he has met none. Therefore, based on the foregoing reasons, this Court DENIES WITHOUT PREJUDICE Plaintiff's Request for a Preliminary Injunction, (Doc. 20), and Plaintiff's Motion to Proceed with Preliminary Injunction Without Plaintiff's Presence at Hearing, (Doc. 30).

Signed in Baton Rouge, Louisiana, on <u>December 18, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**